UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:21-CV-00038-JHM

CHARLES CHRISTOPHER HOUSE                                              PLAINTIFF

V.

HENDERSON CTY. DET. CENTER, ET AL.,                                    DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Henderson County's Motion for Summary Judgment [DN 25] and Plaintiff Charles Christopher House's Cross-Motion for Summary Judgment [DN 39]. Fully briefed, this matter is ripe for decision. For the following reasons, the Defendant's Motion is **GRANTED,** and the Plaintiff's Motion is **DENIED**.

### I. BACKGROUND

Charles Christopher House was held in the Henderson County Detention Center ("HCDC") on federal charges from February 2020 until July 2021. [DN 26 at 2]. During the first half of Mr. House's time there, HCDC would deliver his unopened mail to him directly. [DN 26 at 1]. During this period, HCDC experienced an increase in inmates receiving contraband in their mail, including in envelopes fraudulently marked as "legal mail." *Id.* To prevent further instances of contraband smuggling, HCDC changed its mail policy in September 2020. *Id.*; [DN 40 at 1]. Since that date, HCDC has opened inmates' mail for them to ensure that is does not contain contraband. [DN 26 at 1]. An HCDC employee opens—but does not read—the inmate's mail in the inmate's presence, separated only by glass windows. *Id.*; [DN 40 at 2]. Then, the employee walks out of the inmate's sight and electronically scans the mail onto that inmate's electronic mail account. [DN 40 at 2].

Inmates then access their mail electronically via a tablet system in the facility known as Telmate, and each inmate's personal account is password protected. *Id*; [DN 26 at 1–2]. After scanning, the mail is dropped in the inmate's permanent storage. [DN 26 at 1–2].

Telmate's terms of use make clear to the inmates that outsiders can access Telmate communications in certain circumstances. Paragraph 3 of Telmate's terms of use say as follows:

> The only methods of communication through the Telmate system that offer the protection of privileged attorney-client communication at this time are telephone calls to phone numbers that have been pre-approved for non-recording as a designated attorney telephone number, or video visitation communications that have been pre-approved for non-recording pursuant to the procedures of the agency managing the facility where an individual is detained. Any and all other content or information shared, transmitted, or sent using any other communication method, including messaging, may be accessed, reviewed, searched, used, recorded, copied, viewed, listened to, displayed, or distributed by Telmate, correctional facility staff, or agents, of law enforcement. . . .
>
> Legal Documents will be scanned by designated facility personnel and delivered to inmates via Facility Messages. The Facility Messages platform excludes investigator users. Such investigator users do not have accessibility/visibility to the Facility Messages platform.

[DN 39-1 at 1–2]. Paragraph 12 goes on to say that "Telmate, or agents of law enforcement may access, review, search use (*sic*), record, modify, copy, view, listen to, display or distribute any and all of your content and personally identifiable information as permitted by law, without providing notice or compensation." [DN 39-1 at 6] (all caps omitted). Paragraph 15 then states that inmates' personal data is not guaranteed to be 100% secure. [DN 39-1 at 7]. Finally, Telmate's privacy policy states that the service shares data with law enforcement, correctional facilities, and other investigative entities. [DN 39-2 at 2].

After the mail policy was fully implemented, Mr. House accepted all his mail in accordance with the policy except for two occasions shortly after its implementation. [DN 26 at 2]. On January 19, 2021, Mr. House received mail from the Madison County Department of Child Services. *Id.*; [DN 26-2 at 1]. An HCDC officer brought the mail to Mr. House's cell, explained

the new mail policy, and refused to give him his mail unless he complied with the new policy. [DN 1 at 4]. Mr. House refused to sign the waiver and allow the officer to scan the mail onto the tablet, so the officer returned it to its sender without Mr. House reading it and marked the mail as refused. *Id.*; [DN 26-2 at 1]; [DN 40 at 1–2]. The same happened with a piece of mail from Madison County Circuit Court about a month later. [DN 26 at 2]; [DN 26-2 at 2]; [DN 40 at 1–2]. Both returned pieces of mail related to an Indiana state court case involving Mr. House's children and unrelated to the federal charges he was being held at HCDC for. [DN 39-4 at 2–4]; [DN 26 at 2].

Mr. House filed a complaint against HCDC and several of its employees on April 14, 2021, believing that HCDC's policy of denying him his legal mail unless he consents to it being scanned to the Telmate tablet system violates his First, Fourth, and Fourteenth amendment rights. [DN 1 at 4].

## II. Standard of Review

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.

3

574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

The fact that a plaintiff is *pro se* does not lessen his obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted). When opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter his duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion"). However, statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

### III. DISCUSSION

*A. Standing*

Standing is a threshold question in every federal action. *Grendell v. Ohio Sup. Ct.*, 252 F.3d 828, 832 (6th Cir. 2001). Plaintiff must show he has personally suffered an actual injury or

is in immediate danger of sustaining one because of Defendants' conduct. *United States v. Hays*, 515 U.S. 737, 743 (1995); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). At the summary judgment stage, the plaintiff must make "a factual showing of perceptible harm" to establish standing. *Rice v. Vill. of Johnstown*, 30 F.4th 584, 591 (6th Cir. 2022) (quoting *Lujan*, 504 U.S. at 566). "The plaintiff cannot rest on mere allegations, like at the pleading stage, but must set forth by affidavit or other evidence specific facts demonstrating standing's three elements." *Id.* (internal quotation marks omitted). Those three elements are 1) injury in fact, 2) that is fairly traceable to the defendant's conduct, and 3) is likely to be cured by a favorable decision. *Id.*

Mr. House did not show that HCDC's mail policy caused him any harm. He did not present any evidence, or even allege, that anyone read his mail, either in hard copy or through the tablet system. He merely speculates that the someone *could* have read his mail or accessed his tablet account. [DN 40 at 5]. An opportunity for harm to occur is not a harm itself, and mere speculation that a harm might have occurred is not enough to defeat summary judgment. *See King v. Deskins*, No. 99-6381, 2000 WL 1140760, at *2 (6th Cir. Aug. 8, 2000) ("A speculative injury does not vest a plaintiff with standing . . . ."). Further, Mr. House fails to allege or show how HCDC's return of two pieces of mail to their senders—even if doing so was wrongful—harmed him, and it is not clear to the Court how that could have harmed him.

Therefore, it appears Mr. House does not have standing to pursue his claims. Nevertheless, the Court will now address the merits of his claims.

B. *First Amendment*

The First Amendment protects a prisoner's right to receive mail, but prison officials may impose restrictions on the receipt of mail that are reasonably related to security and other legitimate penological objectives. *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003). This includes

5

opening a prisoner's mail "pursuant to a uniform and evenly applied policy with an eye to maintaining prison security." *Id.* (quoting *Lavado v. Keohane*, 992 F.2d 601, 607 (6th Cir. 1993)). But when the mail is legal mail, the Court has a heightened concern with allowing prison officials uninhibited access, because a prison's security interests do not automatically supersede a prisoner's First Amendment right to receive correspondence that relates to the prisoner's legal rights, attorney-client privilege, or access to the courts. *Id.* at 874.

To balance both the security interests of the prison and the First Amendment rights of the inmate, courts have approved prison policies that permit prison officials to open legal mail and inspect it for contraband in the presence of the prisoner. *Id.*; *see also Wolff v. McDonnell*, 418 U.S. 539 (1974); *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992). Accordingly, even constitutionally protected mail can be opened—but not read—by prison officials to inspect it for contraband. Such activity must occur in the presence of the recipient inmate. The Federal Bureau of Prisons' policy on legal mail reflects this rule. *See* 28 C.F.R. § 540.12(b); 28 C.F.R. § 540.18(a). Additionally, Kentucky law expressly permits delivery of legal mail to the prisoner via an electronic copy provided on a secure, personal account after being opened and inspected for contraband in the presence of the prisoner. KRS 441.055(a)(2)(d).

HCDC's policy of inspecting legal mail for contraband in the presence of the prisoner and then scanning the mail onto the electronic tablet system to be read only by the inmate does not violate the foregoing law. HCDC employees opened Mr. House's mail in front of him to confirm that it did not contain contraband. [DN 40 at 2]. They then allowed him access to read it through the Telmate tablet system. *Id.* The Supreme Court and the Sixth Circuit have upheld these policies as constitutional, finding they necessarily account for both the prison's interest in preventing smuggling of illicit substances and the prisoner's First Amendment rights. *See Wolff*, 418 U.S. at

6

577; *Sallier*, 343 F.3d at 873–77; *see also Strebe v. Kanode*, No. 7:17-CV-00321, 2018 WL 4473117, at *2 (W.D. Va. Sept. 18, 2018), *aff'd*, 783 F. App'x 285 (4th Cir. 2019) (upholding policy providing inmates with up to three pages of photocopies of their mail, with the remaining pages and attachments only accessible via electronic tablet). Although Mr. House has a First Amendment right to be free from unreasonable censorship of his mail, that right does not prevent an HCDC officer from opening his mail in his presence and examining it to determine if the mail is being used as a vehicle for illegal conduct. *Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010).

Mr. House does not provide any evidence, or even allege, that HCDC officials read his legal mail at any point, or that they made his legal mail available to anyone other than himself. He merely states that HCDC was "*possibly* reading my legal mail" when its officer walked out of sight to scan it and that third parties could, in theory, access his tablet account and read his mail. [DN 40 at 5 (emphasis added)]. The mere possibility of harm is not enough to form of cognizable claim; there must be an actual injury. *Cf. Lewis v. Casey*, 518 U.S. 343, 347–49 (1996) (declining to grant injunction due to lack of actual injuries shown). Mr. House does state in his response brief that "all facility messages also appear in the standard/promotional messages platform which investigators . . . have access to," despite Telmate's terms of use stating that "[t]he Facility Messages platform excludes investigator users." [DN 40 at 2; DN 39-1 at 2]. But here, Mr. House makes a naked assertion that is not supported by any evidence in the record. The Court warned Mr. House that he must "support his facts with affidavits . . . and/or other documents contradicting the material facts asserted by Defendant." [DN 37 at 2 (emphasis removed)]. Unfortunately, Mr. House did not present the Court with any document supporting this statement that contradicts an exhibit that he himself provided. Accordingly, Mr. House's First Amendment claim is insufficient to demonstrate a genuine dispute of material fact.

*C. Fourth Amendment*

Mr. House contends that HCDC opening his legal mail in his presence constitutes an unreasonable search, and HCDC walking away and scanning the mail onto the tablet constitutes an unreasonable seizure, both violative of the Fourth Amendment. [DN 40 at 5]. However, the Supreme Court has held that the "Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). For the Fourth Amendment to apply, the plaintiff must have a reasonable expectation of privacy, and the Court in *Hudson* declared that there can never be a reasonable expectation of privacy while in prison. *See id.* at 525, 528 ("We are satisfied that society would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security."). This principle holds true whether the inmate is a convict or a pre-trial detainee. *See Florence v. Bd. Of Chosen Freeholders*, 566 U.S. 318 (2012) (holding that strip search of arrestee that included lifting of genitals did not violate the Fourth Amendment). The rule applies to searches and seizures in equal measure. In *Hudson*, the Court ruled that the prisoner's Fourth Amendment right was not violated even when the prison guard seized and destroyed his personal property, opining that the proper claim would be under state tort law. *Hudson*, 468 U.S. at 520. Other district courts have specifically held that the Fourth Amendment does not apply to inmates' mail, noting that the issue is better analyzed under the First Amendment. *See, e.g.*, *Horacek v. Grey*, No. 1:09-CV-96, 2010 U.S. Dist. Lexis 24355, at *14 (W.D. Mich. Feb. 4, 2010) (citing *Thomas v. Kramer*, No. 2:08-CV-0544, 2009 U.S. Dist. LEXIS 32874, at *2 (E.D. Cal. April 7, 2009)). Mr. House does not have a cognizable claim under the Fourth Amendment.

*D. Fourteenth Amendment*

The Fourteenth Amendment protects inmates from being deprived of liberty without due process of law. *Wolff*, 418 U.S. at 556. One of those due process rights is the right of inmates to have meaningful access to the courts so they can fight their cases. *Bounds v. Smith*, 430 U.S. 817, 821, 828 (1977); *Ross v. Moffit*, 417 U.S. 600, 611, 612, 616 (1974). In invoking the Fourteenth Amendment, Mr. House implies that HCDC prevented his access to the courts by withholding two pieces of mail from him. [DN 1 at 4]; [DN 40 at 1–2]. But Mr. House is still required to show a "relevant actual injury" from this alleged violation to make a successful claim. *Lewis*, 518 U.S. at 351. The two pieces of Mr. House's mail that HCDC returned to their senders were unrelated to Mr. House's criminal case, so HCDC could not have harmed Mr. House's right to fight his charges. [DN 26 at 6]; [DN 40 at 3]. Instead, the mail was related to a family services case about Mr. House's children that did not impact his rights. [DN 39-4]; [DN 40 at 3]. Mr. House cannot show that HCDC harmed his liberty interest.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant Henderson County's Motion for Summary Judgment [DN 25] is **GRANTED** and Plaintiff Charles Christopher House's Motion for Summary Judgment [DN 39] is **DENIED**.

*Joseph H. McKinley Jr., Senior Judge*
United States District Court

cc: Plaintiff, *pro se*
Counsel of Record

September 15, 2022

9